UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **WEST COAST PRODUCTIONS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Cause No. 4:12-CV-00748 FRB** |
| v. ) | |
| ) | |
| **JOHN DOE 52,** ) | |
| **JOHN DOE 149,** ) | |
| ) | |
| **Defendants.** ) | |

**MOTION TO DISMISS OR SEVER FOR MISJOINDER
OR IN THE ALTERNATIVE MOTION TO QUASH THE SUBPOENA OF
JOHN DOES ## 52 & 149**

Comes now John Does ## 52 and 149 ("Defendants"), by and through counsel, and hereby collectively move this honorable Court to dismiss the above-referenced matter or sever for misjoinder. Alternatively, Defendants move to quash the subpoena directed to Charter Communications, Inc. ("Charter") in the instant case. Defendants state the following in support thereof:

**I. BACKGROUND**

West Coast Productions, Inc. ("Plaintiff"), filed its Complaint alleging that Does 1-442 (the "John Doe Defendants") violated its copyright to the pornographic video production titled "Super Anal Black Cougars," ("the Work") by allegedly uploading and downloading the Work by using an interactive peer-to-peer ("P2P") file sharing client known as BitTorrent. The Court granted Plaintiff's request to take pre-service discovery. To uncover Defendants' identifying information, Plaintiff issued subpoenas to John Doe Defendants' Internet Service Providers (ISPs), including Defendants' ISP, Charter. Plaintiff utilizes an Internet Protocol (IP) address to

identify each of the alleged infringers.  Before revealing Defendant's identifying details, including name and address, Charter alerted Defendants with notice of the Plaintiff's subpoena.

P2P networks are computer systems which enable internet users to: (1) make files (including motion pictures) stored on each user's computer system available for copying by other users or peers; (2) search for files stored on other users' computers, and (3) transfer exact copies of files from one computer to the other via the internet. *See*, *Plaintiff's Complaint,* doc. 1, ¶ 6. The P2P protocol at issue in this suit is called "BitTorrent." BitTorrent allows users to share large computer files, such as the Work in this case, while minimizing the strain on computer networks*. In re: BitTorrent Adult Film Copyright Infringement Cases*, Docket No. 11-3995 (E.D.N.Y. May 1, 2012). BitTorrent works by breaking files into many smaller files to reduce the load on the source computer, rather than downloading a file from a single source computer. *Id*.

Specifically, the BitTorrent software allows a person to visit a private website and download a file containing the desired digital media (such as digital copies of movies) onto a program already installed on the user's computer. *Raw Films, Ltd. v. John Does 1-32*, 2011 WL 6182025 (E.D. Va. Oct. 5, 2011). Once the file is loaded, the BitTorrent program connects to hundreds or thousands of different users that possess and share copies of the particular media contained in the file, and it coordinates the copying of the media using the digital copies of those other users. *Id*. As the original user (or "peer") downloads his or her copy, it is immediately made available to other users looking to obtain the file. In this way, the collection of users who simultaneously "share" a particular file is known as a "swarm." *Id*. Plaintiff argues that the John Doe swarm members simultaneously allowed others to steal (download from the swarm) plaintiff's copyrighted materials, resulting in a significant amount of infringement in this

District, and a significant transmission of infringing materials to and from this District. *See, Complaint*, ¶*12*.

Plaintiff's Complaint is seemingly about the protection of Plaintiff's copyright to the Work, however this litigation is just one of countless actions brought by this Plaintiff and other similar Plaintiffs claiming copyright protection for pornographic films. From the research conducted by Defense Counsel, it appears that very few of these similar actions have ever been brought to trial.

The fact that few similar cases have been brought to trial is significant. It evidences the real purpose of these suits: not to enforce copyrights, but to bully Defendants, such as John Does ##52 and 149, into financial settlements to avoid being publicly associated with a pornographic video company and avoid being publicly accused of illegally downloading pornography.

## II. DEFENDANTS SHOULD BE DISMISSED DUE TO MISJOINDER

If other Doe Defendants are not dismissed out because the Court lacks personal jurisdiction over them, then the remaining Defendants should be severed or dismissed, in accordance to *Fed. R. Civ. P.* 21 for improper joinder. The Federal rules permit joinder only if:

> A. any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> B. any question of law or fact common to all Defendants will arise in the action.

*Fed. R. Civ. P.* 20(a)(2).

Joinder is not necessary, even if these requirements are satisfied. The Court has discretion to choose to instead order separate trials to protect a party against "embarrassment, delay,

expense, or other prejudice." *Fed. R. Civ. P.* 20(b). Severance may occur on the court's motion or a party's motion. *Id*.

    Rule 21 of the Federal Rules of Civil Procedure provides as follows:

Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. *The court may also sever any claim against a party*.

(emphasis added).

    As set forth in Rule 21, to remedy improperly joined parties, the court should not dismiss the action outright, but the court may, at any time, on just terms, add or drop a party. *LaFace Records, LLC v. Does 1-38*, 2008 WL 544992, *5 (E.D.N.C. Feb. 27, 2008) (*citing* Fed. R. Civ. P. 21). The court may act upon a motion by a party or *sua sponte*. *Id*. The trial court has broad discretion to sever issues to be tried before it. *Id*.

    The facts in this case do not support joinder based on Federal Rule 20(a). "The claims against the different defendants will require separate trials as they may involve separate witnesses, different evidence, and different legal theories and defenses, which could lead to confusion of the jury…. Moreover, the Court finds that there will almost certainly [be] separate issues of fact with respect to each Defendant. *BMG Music v. Does 1-203,* No. Civ. A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. 2004). This is sure to be the situation in the instant case, which attempts to join well over 400 defendants.

    Plaintiff argues in this case that Defendants were connected by the same transaction because the Defendants allegedly participated in a "swarm." *See, Complaint*, doc.1 ¶ *5*. The swarm joinder theory (alleging that Doe Defendants were coordinated in their actions) "has been considered by various district courts, the majority of which have rejected it." *Raw Films v. Des*

*1-32,* No. 1:11-CV-2939-TWT, 2011 WL 6840590, at *2 (N.D. Ga. 2011). "Downloading a work as a part of a swarm does not constitute 'acting in concert' with another, particularly when the transaction happens over a long period." *Raw Films* at *2. "Passively allowing another individual to upload a piece of a file is a far cry from the 'direct facilitation' plaintiffs would have this court find." *Cinetel Films, Inc., et al v. Does 1-1052,* No. 11-cv-2438-JFM (D. Md. 2012). The court in *Cinetel* went on to sever all but one Defendant.

In similar cases, other courts have held that where there is no assertion that multiple defendants have acted in concert, joinder is improper. *Laface Records*, *supra* (*citing BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006)) (*sua sponte* severing multiple defendants in action where only connection between them was allegation they used same ISP to conduct copyright infringement); *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782, at *19 (M.D. Fla. Apr. 1, 2004)(magistrate judge recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement).

Many courts have severed defendants in swarm cases, particularly those involving numerous John Does. *See Diabolic Video Productions, inc. v. Does 1-2099*, 2011 WL 3100404 (N.D. Cal. Sept. 6, 2011); *Pacific Century Intern. Ltd. v. Does 1-101*, 2011 WL 2690142 (N.D. Cal. July 8, 2011); *MCGIP, Inc. v. Does 1-149*, 2011 WL 3607666 (N.D. Cal. Aug. 15, 2011); *Hard Drive Productions, Inc. v. Does 1-188*, 809 F.Supp.2d 1150 (N.D. Cal. 2011).[1] As the court explained in *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011), this case is part of an "outbreak of similar litigation ... around the country," in which copyright holders have attempted to assert claims against

multiple unknown defendants by joining them, in often large numbers, into a single action as part of a swarm. *See On The Cheap, LLC v. Does 1–5011*, 280 F.R.D. 500, 502 (N.D.Cal. 2011) (published order). The swarm joinder theory has been considered by various district courts, the majority of which have rejected it. *Raw Films, supra* (*citing On The Cheap* at \*1 (gathering cases)).

The *Cinetel* court stated that even if the Plaintiff were able to satisfy Rule 20(a)(2) for joinder, the court would still "sever the Doe defendants based on [the court's] discretionary authority under Rule 20(b) because allowing joinder here is inefficient, raises significant manageability problems, and is unduly prejudicial to the defendants… This court conversely, finds that severance best promotes judicial economy." *Cinetel* at \*13. Joinder in these cases "fails to promote trial convenience and expedition of the ultimate determination of the substantive issues" because even though numerous defendants might have participated in similar behavior, they are likely to present different defenses. *Digital Sin, Inc. v. Does 1-5698,* 2011 WL 5362068 at \*4. The huge burden of a trial of this kind "completely defeats any suppose benefit from the joinder of the Does… and would substantially prejudice defendants and the administration of justice." *Hard Drive Productions, Inc. v. Does 1-188,* 809 F. Supp. 2d 1150, 164 (N.D. Cal. 2011).

In *BitTorrent Adult Film Copyright Infringement Cases*, *supra*, a case involving 37 defendants, the court ordered severance, finding that "[t]he individualized determinations far outweigh[ed] the common questions in terms of discovery, evidence, and effort required. ... [S]warm joinder complicates these actions, resulting in waste of judicial resources." Similarly, *in Raw Films, supra*, the court determined that joinder under Rule 20 "would not result in judicial economy," and exercised its discretion to sever the claims against the 29 remaining defendants.

Further, in *Pacific Century Int'l v. Does*, 2011 WL 5117424 (N.D. Cal. Oct. 27, 2011), a case involving 101 Does, the court severed the defendants, reasoning as follows:

> The manageability difficulties, procedural inefficiencies, and likelihood that Defendants will assert myriad factual and legal defenses compel it to sever Does 2–101 from this case. An internet based copyright infringement case with at least 101 defendants would prove a logistical nightmare. It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial of 101 such claims would be inefficient, chaotic, and expensive. Each Defendants' varying defenses would require the court to cope with separate discovery disputes and dispositive motions, and to hold separate trials, each based on different evidence. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal. Similarly, pro se Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost. The court ... cannot permit a case to proceed in this manner.

Here, 442 (now approximately 422 are remaining as defendants in the matter) defendants are named in the suit, as opposed to the 101 in *Pacific Century*. If the court there considered a case with 101 Does to potentially be a "logistical nightmare" and a "procedural albatross," then it is inconceivable what kind of "problems" an additional 321 defendants could present. Though the 422 remaining Doe defendants may have engaged in similar behavior, they are likely to present different defenses. As the court noted in *BMG Music v. Does 1-203*, 2004 WL 953888 (E.D. Pa. 2004), at *2, "Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as

Plaintiffs believe." *Id*. Joinder in this case would be especially confusing for the parties involved and would certainly complicate the issues.

The Plaintiff in this case has failed to meet Rule 20's two prong test for permissive joinder. Plaintiff has not adequately demonstrated that Defendants were engaged in the same transaction involving the same question of law or fact common to all Defendants. Therefore, Plaintiff's joinder of the Doe defendants is improper. Defendants John Doe ##52 and 149 should be accordingly dismissed or severed.

Finally, Defendants would ask this Court to note that Plaintiff has attempted to join 442 defendants into a single action, thereby avoiding the payment of multiple filing fees. As the court observed in *CP Productions, Inc. v. Does 1–300*, 2011 WL 737761 (N.D.Ill. Feb. 24, 2011), "No predicate has been shown for thus combining 300 separate actions on the cheap-if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350." In this case, the filing fees, if paid for each of the individual defendants, would amount to a substantially higher figure of $154,700. Allowing these 442 claims to be asserted in a single case would defeat, not enhance, judicial economy. *Raw Films, supra*. Accordingly, it is just that plaintiff should be required to pay the filing fees as to all of the defendants but one.

### III. THE SUBPOENA MUST BE QUASHED

### A. DEFENDANTS HAVE STANDING TO CHALLENGE SUBPOENA

A party has standing to challenge a subpoena issued to a non-party if the party claims "some personal right of privilege in the information sought in the subpoena. *Robertson v. Cartinhour,* No. AW-09-3436, 2010 WL 716221, at *1 (D. Md. Feb. 24, 2010).

In this case, Defendants have a right to privacy in the personal information sought by Plaintiff, including Defendants' names and addresses. No matter how "minimal or 'exceedingly small' the Doe Defendants' interests are, parties need only have 'some personal right or privilege in the information sought' to have standing to challenge the subpoena to a third party." *Robertson*, 2010 WL 716221, at *1. Accordingly, Doe Defendants have standing to contest the subpoenas, and their motions to quash should not be denied on that basis. *Third Degree Films, Inc. v. Does 1-108,* 8:11-cv-3007-DKC (D. Md. 2012).

## B.  SUBPOENA IS AN UNDUE BURDEN AND ABUSIVE TO DEFENDANTS

Federal Rule of Civil Procedure 45(c)(3)(a) states that a court must quash a subpoena that subjects a person to an "undue burden." A court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" upon a showing of good cause. Fed. R. Civ. P. 26(c). The court determines what constitutes an "undue burden" by considering "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Flatow v. Islamic Republic of Iran,* 196 F.R.D. 203, 206 (D.D.C. 2000).

The subpoena in the instant case will most certainly subject Defendants to an undue burden. Plaintiff only presents evidence linking the alleged download to each Defendants IP address. Plaintiff does not present sufficient evidence indicating that each Defendant was the *individual* who executed the alleged illegal download of the "Work." Any individual permissibly or impermissibly using the Defendant's wireless Internet service could have executed the alleged download.

Some courts have denied a similar Plaintiff's requests for pre-service discovery, finding that "Plaintiff's sought-after discovery, as designed, has potential to draw numerous innocent internet users into the litigation, placing a burden upon them that outweighs Plaintiff's need for discovery." *Pac. Century Int'l, Ltd. v. Does 1-101,* CV-11-2533 (DMR), 2011 WL 5117424 at *2 (N.D. Cal. Oct. 27, 2011). The *Pac. Century* court also found that a first round of discovery might only lead to additional rounds of discovery if the owner of the IP address was not the infringer, which the Court found cut against finding good cause for the first round of discovery. That court additionally stated that this invasive discovery could lead to abusive settlement practices. "Nothing prevents Plaintiff from sending a settlement demand to the individual that the ISP identifies as the IP subscriber. That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money for legal assistance, or pay the [settlement] money demanded." *Id.*

"This potential for abuse is heightened given the potentially embarrassing material at issue." *VPR Internationale v. Does 1-1017,* 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. 2011). The lack of a perfect correlation between IP addresses and Doe defendants "gives rise to the potential for coercing unjust settlements from innocent defendants." *Digital Sin, Inc. v. Does 1-176,* CV-12-00126, 2012 WL 263491, at *1 (S.D.N.Y. Jan 30, 2012). Due to the pornographic nature of the download in question, the release of Defendants' personal information risks a substantial and almost certainly permanent injury to Defendants' reputations, and risks subjecting Defendants to the time, expense, emotional distress and humiliation of defending against a baseless and embarrassing lawsuit. If Defendants are publicly accused of illegally downloading pornography, they may be permanently affected and stigmatized. Defendants' business relationships, careers,

family ties, and social ties may be irreparably impacted by the mere public allegation of such an offense.

    Plaintiff should acknowledge the fact that:

"IP subscribers are not necessarily copyright infringers.... [while] an IP address might actually identify an individual subscriber and address the correlation is still far from perfect... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."

*VPR Internationale*, (C.D. Ill. 2011). It is absolutely impossible for Charter or Plaintiff or anyone else to determine from an IP address (a) what type of device was connected to the Internet connection of Defendant on the date in issue, (b) who was using the device on that date, (c) who was aware of the use of that device on that date, or (d) the physical location of any device that was linked to that IP address on that date.

    Most of the ISP subscribers in these cases are not infringing Plaintiff's copyrighted works. Therefore, Plaintiff should not be permitted to unduly burden or harass alleged infringers. This case is, as the *VPR Internationale* court stated, "a fishing expedition by means of a perversion of the purpose and intent of class actions." Accordingly, the subpoena referencing Defendants should be quashed.

## IV. CONCLUSION

    Having stated the foregoing, Doe Defendants ##52 and 149 should be dismissed or severed from the above-captioned case based on misjoinder. Alternatively, the subpoena should be quashed.

    Respectfully submitted,

    FRANK, JUENGEL & RADEFELD,
    ATTORNEYS AT LAW, P.C.

        By *s/ Matthew A. Radefeld*
        MATTHEW A. RADEFELD (#52288MO)
        Attorney for Defendant
        7710 Carondelet Ave., Suite 350
        Clayton, Missouri 63105
        (314) 725-7777

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2012, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Mr. Paul Lasko, Esq.
Simmons Browder Gianaris
   Angelides & Barnerd LLC
Attorneys for Plaintiff
One Court Street
Alton, IL  62002

        *s/ Matthew A. Radefeld*
        MATTHEW A. RADEFELD