# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

WEST COAST PRODUCTIONS, INC.     )
                                      )

    *Plaintiff,*                       )
                                      )

v.                                       ) Case No. 4:12-cv-00748-FRB
                                      )

SWARM SHARING HASH FILES         )
25600BE3C6CC4529AC4247FA9B6BCB8B530857EB, )
8653511547D205181DB2B69D2C3B4F732947F3E4, )
CCDA1BA63666D12E05A652B91008180724F13AB1, ) JURY TRIAL DEMANDED
D895A3C7A530DDD3C8CD7E0F7DEF6B43211F4E35, )
EB72BDD147682AF141C1574A78DD848D01C0CDDC; )
E140B1EB715ECB9984EADBAF0DB393B349AE7C72; )
AND DOES 1-442                       )
                                      )

    *Defendants.*                    )
                                      )

 

## PLAINTIFF'S RESPONSE TO DEFENDANT DOES 52, 149, 190, 113, 130, 184, 317, AND 358'S MOTIONS TO QUASH, SEVER, DISMISS, AND/OR FOR PROTECTIVE ORDER

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS…………………………………………………… i

TABLE OF AUTHORITIES………………………………………………... ii

I.      Introduction……………………………………………………… 1

II.     Background………………………………………………………… 4

        a.  Procedural Background……………………………………… 4

        b.  Technical Background……………………………………… 5

III.    Argument………………………………………………………… 5

        a.   Movant's Motion to Quash Should be Denied…………………… 5

        b.   Movant's Motion for a Protective Order Should be Denied……… 9

        c.   Movant's Motion to Sever and Dismiss Should be Denied……… 9

             1.   Movants' Motions to Sever Should be Denied………………… 13

             2.   Movants' Motions to Dismiss Should be Denied……………… 13

        d.  The Does Should not be Allowed to Proceed Anonymously……… 14

IV.     Conclusion………..……………………................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                        **Page**


*AF Holdings v. Does 1-162,*.................................................................*passim*
  No. 11-23036, 2012 WL 488217 (S.D. Fla. Feb. 14, 2012)

*AF Holdings LLC v. Does 1-1,058,*.....................................................*passim*
  ---F. Supp. 2d ---, 2012 WL 3204917 (D.D.C. Aug. 6, 2012)

*Arista Records LLC v. Does 1-19,*.....................................................       8
  551 F. Supp. 2d 1 ( D.D.C. April 28, 2008)

*Arista Records LLC v. Does 1-27,*.....................................................       4
  584 F. Supp. 2d 240 (D. Me. 2008)

*Armor Screen Corp. v. Storm Catcher, Inc.,*............................................       6
  No. 07-81091, 2008 WL 5049277 (S.D. Fla. Nov. 25, 2008)

*Ashcroft v. Iqbal,*.................................................................      14
  556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly,*.........................................................      13
  550 U.S. 544 (2007)

*Call of the Wild Movie, LLC v. Does 1-1062,*...........................................*passim*
  770 F. Supp. 2d 332 (D.D.C. 2011)

*Capitol Records, Inc. v. Thomas-Rasset,*..............................................       2
  692 F.3d 899 (8 th Cir. 2012)

*Coke v. Loadmaster Corp.,*..........................................................   10, 14
  420 Fed. Appx. 647 (8th Cir. 2011)

*Digital Sin, Inc. v. Does 1-176,*.....................................................*passim*
  279 F.R.D. 239 (S.D.N.Y. 2012)

*Digital Sin, Inc. v. Does 1-245,*.....................................................    5, 12
  No. 11-cv-8170, 2012 WL 1744838 (S.D.N.Y. May 15, 2012)

*Doe v. S.E.C.,*...................................................................       7
  No. 3:11-mc-80184, 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011)

*Donkeyball Movie, LLC v. Does 1-171,*................................................      11
  No. civ-10-1520 (BAH), 2011 WL 1807452 (D.D.C. May 12, 2011)

*First Time Videos, LLC v. Does 1-18,* ................................................................. 7, 8
    No. 4:11-cv-69, 2011 WL 4079177 (S.D. Ind. Sept. 13, 2011)

*First Time Videos, LLC v. Does 1-76* ................................................................. 2
    276 F.R.D. 254 (N.D. Ill. Aug. 16, 2011)

*First Time Videos, LLC v. Does 1-500,* ........................................................7, 8, 14
    276 F.R.D. 241 (N.D. Ill. 2011)

*Hard Drive Prods., Inc. v. Does 1-55,* ............................................................... 11
    No. 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011)

*In re Verizon Internet Servs., Inc.,* ................................................................... 15
    257 F. Supp. 2d 244 (D.D.C. 2003)

*John Wiley & Sons, Inc. v. Doe Nos. 1-27,* ....................................................... 14
    No. 11 Civ. 7627, 2012 WL 364048 (S.D.N.Y. Feb. 3, 2012)

*John Wiley & Sons, Inc. v. Doe Nos. 1-30,* ....................................................... 14
    No. 12 Civ. 3782, ---F.R.D. ---, 2012 WL 4320448 (S.D.N.Y. Sept. 19, 2012)

*Joyce v. Armstrong Teasdale, LLP,* ................................................................... 14
    635 F.3d 364 (8th Cir. 2011)

*K-Beech, Inc. v. Does 1-57,* ............................................................................... 11
    No. 2:11-cv-358-Ftm-36SPC, 2011 WL 5597303 (M.D. Fla. Nov. 1, 2011)

*Liberty Media Holdings, LLC v. Swarm Sharing Hash File*
    *AE340D056129AFEE8D78CE07F2394C7B5BC9C05 and Does 1-38,* ............ 7, 8
    821 F. Supp. 2d 444 (D. Mass. 2011)

*Malibu Media, LLC v. John Doe 1-21,* ............................................................... 9
    No. 12-cv-008352012, WL 3590902 (D. Colo. Aug. 21, 2012)

*MCGIP, LLC v. Does 1-316,* .............................................................................. 8
    No. 10 C 6677, 2011 WL 2292958 (N.D. Ill. June 9, 2011)

*Mosley v. General Motors Corp.,* ....................................................................... 13
    497 F.2d 1330 (8th Cir. 1974)

*Patrick Collins, Inc. v. Does 1-15,* ..................................................................... 11
    No. 11-cv-02164-CMA-MJW, 2012 WL 415436 (D. Colo. Feb. 8, 2012)

*Patrick Collins, Inc. v. Does 1-33,* ..................................................................... 3
    No. 11-cv-02160, 2012 WL 415424 (D. Colo. Feb. 8, 2012)

*Raw Films, Ltd. v. John Does 1-15*,……………………………………………*passim*
       No. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012)

*Sony Music Entm't Inc. v. Does 1-40*,………………………………………… 14
       326 F. Supp. 2d 556 (S.D.N.Y. Feb. 18, 2009)

*West Coast Prod., Inc. v. Does 1-5,829*,……………………………………… 9, 11
       275 F.R.D. 9 (D.D.C. 2011)

<u>Congressional Record</u>

No Electronic Theft (NET) Act, Pub. L. No. 105-147, §2(a), 111 Stat. 2678 (1997)…. 3

<u>Statutes</u>

FED. R. CIV. P. 1……………………………………………………… 3, 10

FED. R. CIV. P. 12(b)………………………………………………… 13

FED. R. CIV. P. 20(a)………………………………………………… 12

FED. R. CIV. P. 20(b)………………………………………………… 13

FED. R. CIV. P. 20(a)(2)……………………………………………… 12

FED. R. CIV. P. 21…………………………………………………… 13

FED. R. CIV. P. 26(c)………………………………………………… 6

FED. R. CIV. P. 26(f)………………………………………………… 5

FED. R. CIV. P. 45(c)(3)(A)………………………………………….. 5, 6

FED. R. CIV. P. 45(c)(3)(B)………………………………………….. 6

## I.  Introduction

This opposition responds to motions to quash, sever, dismiss and/or for a protective order filed by Defendant Doe Numbers 52, 113, 130, 149, 184, 190, 243, 317 and 358. Docket Nos. 24, 25, 26, 29 and 40. These motions should be denied for the reasons given below.

This action and Plaintiff's motion for expedited discovery are proper ways to protect Plaintiff's copyright. Here, there are six swarms of infringers containing 442 Missouri Does who either reside in Missouri or utilize Internet Service Providers ("ISPs") located in Missouri. All of the IP Addresses identified in this action are linked to individuals that illegally shared Plaintiff's copyrighted motion picture ("Motion Picture"). By allowing joinder of all infringing defendants, Plaintiff has a practical method of enforcement that benefits all, even the Doe Defendants.

The moving Doe Defendants ("Movants") propose handling this matter (and all BitTorrent matters) by splitting it into as many separate actions as there are Defendants. This is cost prohibitive to Plaintiff, or any copyright holder and would effectively prevent enforcement of copyright registration(s). For example, if Movants' proposal was adopted, the filing fees alone for this film would cost over $154,700 ($350 * 442). This exceeds the costs of producing the Motion Picture. And while the Motion Picture is a small film, larger producers face even more insurmountable fiscal hurdles. If any of the most illegally download films in 2011[1] would pursue illegal downloaders, just filing such actions would exceed the gross returns of any of the films:

| Movie | Downloads | Worldwide Gross | Cost to File Separate Actions | Fees **in Excess** of Worldwide Gross |
|-------|-----------|-----------------|-------------------------------|----------------------------------------|
| *Fast Five* | 9,260,000 | $626,137,675 | $3,241,000,000 | $2,614,862,325 |
| *The Hangover II* | 8,840,000 | $581,464,305 | $3,094,000,000 | $2,512,535,695 |

---

[1] Information for movie downloads and worldwide gross taken from http://torrentfreak.com/top-10-most-pirated-movies-of-2011-111223/.

| | | | |
|---|---|---|---|
| *Thor* | 8,330,000 | $449,326,618 | $2,915,500,000 | $2,466,173,382 |
| *Source Code* | 7,910,000 | $123,278,618 | $2,768,500,000 | $2,645,221,382 |
| *I Am Number Four* | 7,670,000 | $144,500,437 | $2,684,500,000 | $2,539,999,563 |
| *Sucker Punch* | 7,200,000 | $89,792,502 | $2,520,000,000 | $2,430,207,498 |
| *127 Hours* | 6,910,000 | $60,738,797 | $2,418,500,000 | $2,357,761,203 |
| *Rango* | 6,480,000 | $245,155,348 | $2,268,000,000 | $2,022,844,652 |
| *The King's Speech* | 6,250,000 | $414,211,549 | $2,187,500,000 | $1,773,288,451 |
| *Harry Potter and the Deathly Hallows Pt. 2* | 6,030,000 | $1,328,111,210 | $2,110,500,000 | $792,388,790 |

Movants' proposals are untenable if copyrights are to be upheld in the BitTorrent age.

Defendants improperly focus on an increase in infringement lawsuits when the focus should be on the pervasiveness of illegal BitTorrent copying. As the United States District Court for the District of Columbia stated when it denied ISPs' motions to quash BitTorrent subpoenas:

> While the ISPs assert that they are burdened by the number of pending copyright infringement actions and associated requests for identifying information for their customers, the plaintiff aptly states that "[w]ithout a large and growing problem of copyright infringement, there could not be an increasing level of copyright infringement litigation."

*AF Holdings LLC v. Does 1-1,058*, --- F.R.D. ----, 2012 WL 3204917, at 7 (D.D.C. Aug. 6, 2012) (citation omitted). The Eighth Circuit recently addressed the liability aspect of online copyright infringement when it upheld a $222,000 jury trial verdict for a woman's online infringement of 24 songs ($9,250 per song). *Capitol Records, Inc. v. Thomas—Rasset*, 692 F.3d 899, 906 (8th Cir.2012). The Eighth Circuit cited a 1999 House Report which reinforces the liability stemming from online copyright infringement:

> By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works ...Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do

2

> not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct.

*Id.* (*citing* No Electronic Theft (NET) Act, Pub. L. No. 105-147, §2(a), 111 Stat. 2678 (1997)).

Similarly, in a footnote, the *AF Holdings* court recognized the damages caused by online infringing activity, not only to rights holders, but to the U.S. economy:

> The plaintiff's estimates regarding the amount of online infringing activity and the economic harm resulting from such activity is corroborated by a recent government report. *See* U.S. GOV'T ACCOUNTABILITY OFFICE, GAO–10–423, INTELLECTUAL PROPERTY: OBSERVATIONS ON EFFORTS TO QUANTIFY THE ECONOMIC EFFECTS OF COUNTERFEIT AND PIRATED GOODS 23–24 (2010) (estimating that U.S. economy annually loses $58 billion, over 370,000 jobs, and $2.6 billion in tax revenue as a result of copyright infringement over the Internet) (citing Stephen E. Siwek, THE TRUE COST OF COPYRIGHT INDUSTRY PIRACY TO THE U.S. ECONOMY, Institute for Policy Innovation (IPI), IPI Center for Technology Freedom, Policy Report 189 (Oct.2007)).

*Id.* at n.5. Lawsuits such as Plaintiff's are brought in an attempt to "salvage the value of its copyright" in view of such infringement. *Id.* at 7.

The District of Colorado offered a similar analysis when it denied two Doe Defendants' motions to sever in a BitTorrent case and pointed out that the plaintiff "would face significant obstacles in its efforts to protect the Work from copyright infringement...." *Patrick Collins, Inc. v. Does 1-33*, No. 11-cv-02160, 2012 WL 415424, at *3 (D. Colo. February 8, 2012). The Colorado court continued, considering the import of FED. R. CIV. P. Rule 1 to copyright holders:

> ...Plaintiff would need to file individual cases, which would require Plaintiff to pay the court separate filing fees in each case, further limiting its ability to protect its legal rights. See Fed.R.Civ.P. 1 (providing that the Federal Rules of Civil Procedure should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, Plaintiff would be substantially prejudiced by severance.

*Id.*

3

If Movants' motions are granted, the inmates are truly running the asylum as they will effectively be free to illegally copy not only Plaintiff's Motion Picture, but also other copyrighted content on the Web. In essence, they are seeking a license to infringe. This has been recognized by other courts: "Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interest." *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 252 (D. Me. 2008). While there are courts with differing opinions on BitTorrent actions, their opinions 1) clash with Rule 20's transaction and occurrence requirements, and 2) rely on factual situations weaker than those presented here. For example, all Does in this action are related and have links to Missouri: they all downloaded the same Motion Picture which originated with one of six seed files, each Doe either is a Missouri resident, utilizes a Missouri ISP, or is a member of a swarm dominated by Missouri Does. Further, three of the moving Does have been located in Missouri (Does 52, 149 and 190) according to GPS location technology. *See* Exhibit A to Complaint. The remaining six Does utilized a Missouri ISP (Charter Communications, headquartered in Town and Country, Missouri) and interacted with Missouri Does (Does 113, 130, 184, 317, 243, 358). See *id.*

For the reasons set forth herein, Plaintiff respectfully requests that this Court deny all Movants' motions. (Docket Nos. 24, 25, 26, and 29).

## II. Background

### a. Procedural Background

The Court granted Plaintiff's motion for expedited discovery on June 18, 2012, and in response Plaintiff served subpoenas on six service providers. The service providers then sent letters to their customers informing them of the subpoenas, and six Movants filed various Motions for Dismissal, for a Protective Order, to Quash the Subpoenas, and/or similarly styled

4

motions. Pursuant to Court Order (Docket No. 12), the moving Does' contact information has been withheld from Plaintiff by their ISPs. This opposition responds to all of the Does' motions.

### b. Technical Background

Plaintiff's memorandum in support of its expedited discovery motion (Docket No. 4) provides a detailed summary of the BitTorrent process, a summary of the illegal actions that can be traced to the Defendants' IP addresses, and Plaintiff's investigations into such activity.

## III. Argument

Before delving into why Movants' motions should be denied, it is important to set the record straight. Movants' motions misconstrue the case law landscape, rarely, if ever, citing to contradictory precedent. In reality, and as explained in Plaintiff's opening motion for expedited discovery, there are splits between courts (and even within courts[2]) concerning these issues. However, as explained in greater detail below and in Plaintiff's memorandum in support of its motion (Docket No. 4 at 17-21), Movants' motions should be denied.

Regardless, Movants' filings fall under four categories: 1) motions to quash subpoenas to ISPs, 2) motions to dismiss, 3) motions to sever and/or 4) motion for protective order. Each of these motion types are addressed below.

### a. Movants' Motions to Quash Should be Denied.

A motion to quash a subpoena is governed by Federal Rule of Civil Procedure 45 which states that a subpoena must be modified or quashed if, of import, it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A). In addition, "[t]o protect a person subject to or affected by a subpoena," the Court

---

[2] *Compare Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y.) *with Digital Sin v. John Does 1-245*, No.. 11-cv- 8170, 2012 WL 1744838 (S.D.N.Y. May 15, 2012).

*may* quash or modify a subpoena if, for example, it requires "disclosing a trade secret or other confidential research, development, or commercial information[.]" *Id.* at 45(c)(3)(B).

Under Fed. R. Civ. Pro. 26, a court can "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" for good cause shown. *See* FED. R. CIV. P. 26(c). A district court has broad discretion when fashioning protective orders and the moving party has the burden of showing a particular need for protection under Rule 26(c). *AF Holdings, LLC v. Does 1-162*, No. 11-23036, 2012 WL 488217 at *2 (S.D. Fla. Feb. 14, 2012) (internal citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citation omitted).

Movants' arguments in this regard lack merit because they lack standing to contest the subpoenas. The subpoenas were issued to Movants' ISPs,[3] *not* the Doe Defendants. Generally, parties to actions "may not seek to quash or modify a subpoena on behalf of the non-party to which it was issued." *AF Holdings v. Does 1-162,* 2012 WL 488217 at *3 (*citing Armor Screen Corp. v. Storm Catcher, Inc.,* No. 07-81091, 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008)).

As the *AF Holdings v. Does 1-162* court noted, the only arguable exception "applies to situations in which a subpoena requires disclosure of privileged or other protected matter," however, "even this exception does not help the Doe Defendant[s] here." *See AF Holdings v. Does 1-162*, 2012 WL 488217 at *3 (citations omitted). This is because "privacy or free speech interests of the Doe Defendants are minimal in cases of this kind." *Id.* (citations omitted) ("Although courts have found that file-sharers' activities are entitled to First Amendment protection, they have emphasized that the protection is minimal and that it does not cover illegal

---

[3] Even if the ISPs moved to quash the subpoenas, they would fail as well as a recent, comprehensive decision reiterates. *AF Holdings LLC v. Does 1-1,058*, No. 12-0048 2012 WL 3204917, at 2 (D.D.C. Aug. 6, 2012).

conduct such as copyright infringement."). Other courts have similarly found that "individuals

who use the Internet to download or distribute copyrighted works are engaged in only a limited

exercise of speech and the First Amendment does not necessarily protect such persons' identities

from disclosure." *Id.* (*citing Call of the Wild Movie, LLC v. Does 1–1062,* 770 F. Supp. 2d 332,

349–54 (D.D.C. 2011)); *see also Arista Records LLC v. Does 1–19,* 551 F. Supp. 2d at 8 ("First

Amendment privacy interests are exceedingly small where the 'speech' is the alleged

infringement of copyrights.") Whether a litigant may proceed anonymously requires balancing

the "litigant's substantial right to privacy" with the "constitutionally embedded presumption of

openness in judicial proceedings." *Liberty Media Holdings v. Swarm Sharing Hash File AE34,*

*and Does 1 through 38 et al.,* 821 F. Supp. 2d 444, 452 (D. Mass. 2011) (citations omitted).

"[E]conomic harm or mere embarrassment will not suffice to overcome the public's interest in

disclosure." *AF Holdings v. Does 1-162*, 2012 WL 488217 at *3 (citations omitted).

     Here, the Movants argue that they have a protected interest in their identifying

information. This is incorrect. The subpoenas merely seek information that the Defendants freely

provided to their ISPs. Because of this, courts have routinely held, "Internet subscribers do not

have a reasonable expectation of privacy in subscriber information they have already conveyed

to their [Internet Service Providers]." *Id.* at *4 (*citing Doe v. S.E.C.,* No. 3:11-mc-80184, 2011

WL 4593181, at *3 (N.D. Cal. Oct.4, 2011)); *First Time Videos, LLC v. Does 1–18,* No. 4:11-cv-

69, 2011 WL 4079177, at *1 (S.D. Ind. Sept.13, 2011); *First Time Videos, LLC v. Does 1–500,*

276 F.R.D. 241, 249 (N.D. Ill. 2011). Individuals also have "no protected privacy interest in their

name, address, phone number, e-mail address, or Media Access Control address when there is an

allegation of copyright infringement." *Id.* (*citing First Time Videos v. Does 1-18,* 2011 WL

4079177, at *1). To the extent Movants have such a privacy interest, it is "overcome by the

7

Plaintiff's need to identify and pursue litigation against these purported infringers." *Id.* (*citing Arista Records*, 551 F. Supp. 2d at 8–9); *Liberty Media Holdings*, 2011 WL 5161453, at *7.

Movants' arguments that these subpoenas impose an undue burden fail as well. "Courts that have addressed this issue have concluded that the issuance of a subpoena to the Internet Service Provider of putative defendants does not create an undue burden on the putative defendants because they are not required to produce anything." *First Time Videos v. Does 1–18*, 2011 WL 4079177, at *1; *see also First Time Videos v. Does 1–500*, 276 F.R.D. at 250; *MGCIP v. Does 1–316*, No. 10 C 6677, 2011 WL 2292958 at *1 (N.D. Ill. June 9, 2011).

Finally, Movants attack with unsubstantiated arguments alleging this lawsuit is extortion. This action is not an extortion attempt—it is a viable cause of action supported by evidence. *See* Docket Nos. 1 and 4. Regardless, courts find such arguments are insufficient to quash subpoenas. As one court stated, "[t]his allegation is not supported in the motion papers or by [the Plaintiff's] actions to date. It is purely speculative and not grounds for allowing the moving defendants to proceed anonymously." *AF Holdings v. Does 1-162, No.* 11–23036, 2012 WL 488217, at *4 (*citing Liberty Media Holdings*, 2011 WL 5161453, at *7). As the *AF Holdings* court noted:

> The only argument remaining—that copyright infringement suits of this sort are baseless "fishing expeditions" used solely to extort money from alleged infringers—amounts to nothing more than an *ad hominem* attack on the Plaintiff. This line of argument fails to persuade. And it is especially inappropriate coming from an individual attempting to litigate, without counsel, anonymously. …As one court recently observed,
>
> [P]arties to a lawsuit must typically openly identify themselves in their pleadings to protect the public's legitimate interest in knowing all the facts involved, including the identities of the parties. The public has a common law right of access to judicial records, and allowing a party to litigate anonymously undermines that public right.

*Id.* (*quoting West Coast Prods, Inc. v. 1-5,829*, 275 F.R.D. 9, 12 (D.D.C. 2011)) (citations omitted). The *AF Holdings* court continued, "[i]t is inappropriate for this Doe Defendant to hurl unsubstantiated personal attacks at the Plaintiff from behind a shroud of anonymity." *Id.*

### b. Movants' Motions for a Protective Order Should be Denied.

Parties "seeking a protective order carr[y] the burden of showing good cause and/or the right to be protected." *AF Holdings v. Does 1-162*, 2012 WL 488217 at *5. Here, Movants cannot carry their burden. As discussed in greater detail above, the third-party subpoenas issued to the ISPs seek a minimum amount of information that is essential to this litigation—namely, the identities and locations of the Doe Defendants. Similarly, it is not overly broad or unduly burdensome to the ISPs (*i.e.*, the ISPs have not moved to quash the subpoenas), it therefore cannot place undue burdens on the Doe Defendants who are not involved in the data collection process. Thus, a protective order should not issue. *Id.* at *6.

### c. Movants' Motions to Sever and Dismiss Should be Denied.

Movants' arguments regarding misjoinder and personal jurisdiction are procedurally flawed and premature. At the outset, "the plain language of Rule 45 does not authorize the Court to quash a subpoena based on misjoinder. Rule 45 provides four circumstances under which the Court must quash a subpoena, and the Court will not create a fifth." *Malibu Media, LLC v. John Does 1-21*, No. 12-cv-008352012, WL 3590902, at *3 (D. Colo. Aug. 21, 2012).

Plaintiff is merely utilizing a subpoena to attempt to locate individuals who unlawfully downloaded and distributed its copyrighted work without permission. Movants have not been personally named in this action or served with the Complaint (indeed, their arguments are putting the cart before the horse). Therefore, Movants are not required to respond to the Complaint or otherwise litigate in this District unless and until they are properly named.

Without such data the Court is without the "information necessary to evaluate any personal jurisdiction challenges, in no small part because th[ese] Doe Defendant[s]… are anonymous—a problem to which the instant discovery is specifically addressed. As other courts have found, joinder of Doe Defendants is appropriate under such circumstances." *Id.* at *4. After the Doe Defendants are identified, if they believe they are misjoined they can again raise this argument based upon the actual parties involved at that point in time.

Additionally, joinder at this point in time will not prejudice any defendant or result in needless delay. *Raw Films, Ltd. v. John Does 1-15,* No. 11-7248, 2012 WL 1019067, at *4 (E.D. Pa. Mar. 26, 2012). To the contrary, severance of the action as requested by Movants would require the filing of separate actions and the service of new subpoenas on the ISPs to identify each defendant. This would not "secure the just, speedy, and inexpensive determination" of the action. *Id. (citing* FED. R. CIV. P. 1).

Further, no defendant will be prejudiced by joinder at this stage, as none has been served in the matter or required to respond to the complaint. *Id.* Further, the Doe Defendants "may benefit from joinder by permitting them to obtain the same discovery from the plaintiff or allowing them to see any defenses raised by other Doe defendants." *Id. (citing Call of the Wild Movie, LLC v. Does 1–1062,* 770 F. Supp. 2d 332, 344 (D.D.C. 2011)).

Regardless, Plaintiff already addressed the severance and dismissal issues raised by Movants in its motion for expedited discovery. Docket No. 4 at 17-21. Given the overlap between Defendant Does, the fact each Doe downloaded/uploaded the identical initial swarm file to others, the fact that Plaintiff's investigator received an illegal upload from each IP Address corresponding to each Defendant Doe, and the Does' connections to Missouri, joinder is proper.

Rule 20 provides a two-prong test that allows joinder when: 1) claims arise out of the same transaction, occurrence or series of transactions and 2) there is at least on common question of law or fact linking all of the claims. *Coke v. Loadmaster, Corp.*, 420 Fed. Appx. 647, 648 (8th Cir. 2011). Within the past two years, numerous courts have denied similar Doe Defendant motions.[4] For example, the Eastern District of Pennsylvania held:

> The Court finds that the allegations of the complaint make joinder appropriate at this early stage of litigation because the plaintiff asserts a right to relief against all Doe defendants that appears, given the technology involved, to arise out of the same series of transactions or occurrences and because common questions of law or fact seem to be raised with respect to all Doe defendants by virtue of the use of BitTorrent to transmit the same copy of the plaintiff's Work. Further, the Court finds that (a) the information sought in the subpoenas is relevant to the plaintiff's claims; and (b) under the circumstances, the plaintiff's right to pursue its claims of infringement by means of discovering subscriber information outweighs the moving defendant's asserted rights to remain anonymous in connection with the alleged infringing activity. As a result, the Court will deny the moving defendants' motions to quash or modify the subpoenas.

*Raw Films,* 2012 WL 1019067, at *2 -3.

*Raw Films'* finding is particularly important in that the defendants' activities in the swarm were found to be part of the same transaction or occurrence or series of transactions or occurrences. Specifically, the court analyzed the nature of the BitTorrent protocol with an eye toward the joinder analysis, explaining that "the pieces of the Work copied by each defendant may have been transmitted by or subsequently sent to other defendants, albeit indirectly, because 'recipient peers ... automatically begin delivering the piece they just received to other peers in the same swarm.'" *Id.* at *4 (citations omitted). The *Raw Films* court was not concerned with direct

---

[4] *See, e.g., Raw Films,* 2012 WL 1019067, at *2 -3; *AF Holdings v. Does 1-1,058*, --- F.R.D. ----, , 2012 WL 3204917, at *12 (D.D.C. Aug. 6, 2012); *Patrick Collins, Inc. v. Does 1–15*, No. 11–cv–02164–CMA–MJW, 2012 WL 415436, at *2–4 (D. Colo. Feb. 8, 2012); *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 244; *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F.Supp. 2d 332, 342–43 (D.D.C. 2011); *W. Coast Prod., Inc. v. Does 1–5829*, 275 F.R.D. 9, 15–16 (D.D.C. 2011); *K–Beech, Inc. v. Does 1–57*, No. 2:11–cv–358–Ftm–36SPC, 2011 WL 5597303, at *5–*7 (M.D.Fla. Nov.1, 2011); *Hard Drive Prods., Inc. v. Does 1–55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D.Ill. Oct.12, 2011); *Donkeyball Movie, LLC v. Does 1–171*, No. civ–10–1520(BAH), 2011 WL 1807452, at *4– *5 (D.D.C. May 12, 2011).

interaction among swarm members, finding a common link regardless, "[e]ven if no Doe defendant directly transmitted a piece of the Work to another Doe Defendant, the Court is satisfied that at this stage of the litigation the claims against each Doe Defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server." *Id.* Similarly, the Court deciding *Digital Sin* (which also issued after Plaintiff filed this action) found:

> ... it is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a). In the present case, Plaintiff has satisfied the *DigiProtect* standard by alleging that the Doe defendants were trading the exact same file as part of the same swarm.

*Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012) (emphasis in original).

The *Raw Films* court also found that "common questions of fact are likely to arise along with the legal standards for direct and contributory copyright infringement liability" in such BitTorrent suits. Specifically,

> The claims against each defendant are logically related because they will feature largely duplicative proof regarding the nature of BitTorrent, the plaintiff's ownership interest in the copyright for the Work, and the forensic investigation conducted by the plaintiff ... The joining of the fifteen defendants that have these elements in common will, at this point, prevent a multiplicity of lawsuits.

*Raw Films,* 2012 WL 1019067, at *4. After its careful analysis, the *Raw Films* court concluded, "the requirements of Rule 20(a)(2) are met, and its purposes furthered." *Id.*

While there are courts that have granted such motions, it should be noted that not only are the splits among different courts, there are splits *within* the same court. *Compare Digital Sin, Inc. v. Does 1-176,* 279 F.R.D. at 244 *with Digital Sin v. John Does 1-245,* No. 11-cv- 8170, 2012 WL 1744838. However, it appears that the decisions granting these motions were in cases where

the level of participation in the swarm was less detailed than in this action. Docket No. 1-11, Ex. A; Docket No. 1 at ¶¶ 4-10, 61; Docket No. 3 at ¶¶ 16-18.

In view of the above, Defendants' motions to dismiss should be denied.

### 1.  Movants' Motions to Sever Should be Denied.

Severance is decided pursuant to Fed. R. Civ. Pro. 20(b), which provides that courts "may order separate trials or make other orders to prevent delay or prejudice," and FED. R. CIV. P. Rule 21, which provides that "[a]ny claim against a party may be severed and proceeded with separately." The determination of whether to grant severance is left to the discretion of the district court. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir.1974). Courts strongly encourage joinder and favor "the broadest possible scope of action consistent with fairness to the parties." *Id.* at 1333.

Courts have recognized that efficiencies occur in these actions with a combined discovery process. *AF Holdings LLC v. Does 1-1,058,* 2012 WL 3204917 at 1; *Raw Films,* 2012 WL 1019067, at *4 (*citing Call of the Wild Movie,* 770 F. Supp. 2d at 344.). Should the Court find it necessary, Rule 20 allows for separate trials, which would eliminate any alleged issues the Defendant Does may have. In view of the above, Movants' motions to sever should be denied.

### 2.  Movants' Motions to Dismiss Should be Denied.

A motion to dismiss is governed by Federal Rule of Civil Procedure 12(b) and may encompass various defenses, such as lack of personal jurisdiction and failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b). When considering such a motion, the Court must accept all of the Complaint's allegations as true. *Joyce v. Armstrong Teasdale, LLP,* 635 F.3d 364, 365 (8th Cir. 2011). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

13

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 (2009). A pleading that merely offers "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a

motion to dismiss. *Id*

Movants have shown no entitlement to dismissal of this action. The apparent bases for

the Defendants' motions focus on personal jurisdiction and misjoinder—issues that are not ripe.

*See First Time Videos v. Does 1-500,* 276 F.R.D. at 251. To the extent Movants seek dismissal

for lack of personal jurisdiction, it is imperative to note that the Defendants have not been named

or served with the Complaint, so arguments as to venue and personal jurisdiction are premature.

*John Wiley & Sons, Inc. v. Doe Nos. 1-30*, No. 12 Civ. 3782, --- F.R.D. ----, 2012 WL 4320448,

at *6 (S.D.N.Y. Sept. 19, 2012). "'This action is in its infancy and each defendant will have

ample time to challenge his inclusion in the litigation.'" *Id. (quoting John Wiley & Sons, Inc. v.*

*Does 1–27*, No. 11 Civ. 7627, 2012 WL 364048, at *1–2 (S.D.N.Y. Feb. 3, 2012) (rejecting

joinder, venue and personal jurisdiction challenges on motion to quash) *(citing  Sony Music*

*Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 561 (S.D.N.Y. 2004); *see also Arista Records*

*LLC v. Does 1–16*, No. 8–CV–765, 2009 WL 414060, at *8 (N.D.N.Y. Feb. 18, 2009) (denying

request to be severed from other defendants as premature), *aff'd* 604 F.3d 110 (2d Cir.2010). To

the extent Movants seek dismissal for failure to state a claim such relief would be equally

premature. Upon proper service, the Doe Defendant may renew any such arguments.

### d.  The Does Should not be Allowed to Proceed Anonymously.

"The Rules permit the Court to enter a protective order 'for good cause,' in order to

'protect a party or person from annoyance, embarrassment, oppression, or undue burden or

14

expense.'" *Raw Films,* 2012 WL 1019067 at *6 (citation omitted). Movants have failed to meet

their burden in showing that such a privacy interest exists which would require the entry of such

an order. "A Doe defendant who has allegedly used the internet to unlawfully download and

disseminate copyrighted material does not have a significant expectation of privacy." *Id.* at *8;

*accord In re Verizon Internet Servs., Inc.,* 257 F. Supp. 2d 244, 267 (D.D.C. 2003) (engaging in

peer-to-peer file-sharing is akin to "essentially opening up the computer to the world"). Here,

Movants' "interest is substantially outweighed by the need to disclose it so that the plaintiff may

proceed with bringing what appear to be non-frivolous claims of copyright infringement that

cannot be advanced by other means." *Id.* Similarly, "the potential embarrassment or social

stigma that [the Doe Defendants] may face once their identities are released in connection with

this lawsuit is not grounds for allowing them to proceed anonymously." *Liberty Media Holdings,*

*LLC,* 821 F. Supp. 2d 444, 453 (D. Mass. 2011). In short, Movants, have failed to show any

sufficient privacy interest that would serve to confer standing upon him/her to challenge the

subpoenas to the ISPs. Therefore, the Court should deny any protective orders allowing Movants

to proceed anonymously.

## IV. Conclusion

For the reasons set forth herein, Plaintiff respectfully requests that that this Court deny all

Movants' Motions to Quash, Motions to Dismiss, Motions to Sever, Motions for Protective

Orders or to proceed anonymously.

Dated: November 9, 2012

                                                   Respectfully submitted,
WEST COAST PRODUCTIONS, INC.

By its Attorneys,
SIMMONS BROWDER GIANARIS

15

ANGELIDES & BARNERD LLC

By: */s/ Paul A. Lesko*
Paul A. Lesko – E.D.Mo. Bar No. 51914
One Court Street
Alton, IL 62002
Ph: 618.259.2222
Fax: 618.259.2251
Email: plesko@simmonsfirm.com

*Attorney for Plaintiff West Coast
Productions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2012, I electronically filed the foregoing document via the Court's ECF, electronic email system, upon all of record as set forth below:

MATTHEW A. RADEFELD (#52288MO)
7710 Carondelet Ave., Suite 350
Clayton, Missouri 63105
(314) 725-7777

Ken J. Ryno # 38300MO
Attorney for Defendant, John Doe 358
1000 Lake St. Louis Blvd., Suite 120
Lake St. Louis, MO 63367
(636) 561-2057 tele
(636) 561-2095 fax
E-mail: kenry@uawlsp.com

*/s/ Paul A. Lesko*
*Attorney for Plaintiff West Coast Productions, Inc.*

16