UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WEST COAST PRODUCTIONS, INC.,   )<br>                                                          )<br>        **Plaintiff,**                              )<br>                                                          )   **Cause No. 4:12-CV-00748 FRB**<br>**v.**                                                  )<br>                                                          )<br>JOHN DOE 422,                              )<br>                                                          )<br>        **Defendant.**                        ) | |

**MOTION TO DISMISS FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION, MOTION TO DISMISS OR SEVER FOR MISJOINDER OR IN THE ALTERNATIVE MOTION TO QUASH THE SUBPOENA OF JOHN DOE # 422**

John Doe Defendant # 422 ("John Doe 422" or "Defendant"), by and through counsel, hereby moves the Court pursuant to Fed. R. Civ. P. 12 and 45(c)(3) to dismiss the above-referenced matter for lack of personal jurisdiction and improper venue, and moves to dismiss or sever for misjoinder. Alternatively, Defendant moves to quash the subpoena directed to Charter Communications, Inc. ("Charter") in the instant case. Defendant states the following in support thereof:

## I.  BACKGROUND

West Coast Productions, Inc. ("Plaintiff"), filed its Complaint alleging that Does 1-442 ("Defendants" or "Does") violated its copyright to the pornographic video production by allegedly uploading and downloading the video using BitTorrent file-sharing software.

The Court granted Plaintiff's request to take pre-service discovery to uncover Defendants identifying information. Plaintiff issued subpoenas to Defendants' Internet Service Providers ("ISPs"), including Defendant's ISP, Charter. Plaintiff utilizes an Internet Protocol ("IP") address to identify each of the alleged infringers. Before revealing Defendant's identifying details,

including name and address, Charter alerted Defendant with notice of the Plaintiff's subpoena, but is not directly contesting the issuance of that subpoena.

While ostensibly asserting its need to protect its copyright, this litigation seems instead part of a larger scheme by Plaintiff and other similarly positioned plaintiffs holding copyrights of pornographic films. These plaintiffs have filed hundreds of cases, arguably misusing federal court procedure to pressure and bully thousands of Doe defendants into lucrative settlements (far surpassing the production value and original gross receipts of the films) to avoid public association with those films—innocent or not—and without court oversight.

## II. JOHN DOE 422 SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a *prima facie* showing of personal jurisction over the challenging defendant, "tested, not by pleadings alone, but by affidavits and exhibits." *KV Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). A federal court cannot exercise jurisdiction over an out of state defendant unless Missouri's long-arm statute is satisfied and the defendant has sufficient minimum contacts with Missouri to satisfy due process concerns and reasonably anticipate being haled into court there. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010); *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291-297 (1980).

Plaintiff's allegations regarding jurisdiction are three-fold: some defendants are Missouri residents, some defendants participated in a swarm which also included Missouri residents, and that some of the defendants "utilize . . . Missouri-based internet service providers [] for their internet service." Complaint at pp. 13. By extension of Plaintiff's logic, almost any individual would be subject to suit in South Dakota for any suit involving the use of his or her credit card, and nearly every person would be subject to suit in Delaware based on entering into a contract

with a Delaware corporation. Entering a contractual relationship with an entity based in a jurisdiction cannot be sufficient to establish minimum contacts. Plaintiff has provided no particularized allegations to tie John Doe 422 to Missouri.

As the Eighth Circuit explained in *Romak USA v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004), to support long-arm jurisdiction, "the cause of action must arise out of or relate to a defendant's activities within a state." (internal citations omitted).  Here, however, Plaintiff alleges that the BitTorrent "program coordinated the copying" through an "interactive, simultaneous data-sharing connection." Complaint at p. 8-10. Thus, the Defendant's actions forming the basis of determining personal jurisdiction are limited to those actions that were taken (or allegedly taken) by the individual—in this case, those occurring in the jurisdiction in which the Defendant IP address was found and the original download occurred.  *Nu Image v. Does 1-23,322*, 799 F. Supp. 2d 34, 39-40 (D.D.C. 2011); *see also Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) ("[T]he situs of the injury is the location of the original event which caused the injury . . . ."). To hold to the contrary would be to ignore the Supreme Court's holdings in *World-Wide Volkswagen v. Woodson*, 489 U.S. 286, 297-299 (1980), requiring the defendant to "purposefully avail" itself of the benefits of the forum in which jurisdiction is sought.

More broadly, Plaintiff has alleged the infringement relied on an automated program. Plaintiff has importantly not alleged that the BitTorrent program provided Defendants either control over where the information was drawn or disseminated, or information about the identity of any other Defendant.  It is well-settled that "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707, 714 (4th Cir. 2002); *see also Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 347 (D.D.C. 2011) (finding the prospect of broad jurisdiction based on engaging in Internet activities

and placing information on Internet "troubling"); *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (reasoning that plaintiff's similar "expansive theory of personal jurisdiction would shred [due process] constitutional assurances out of practical existence").

Plaintiff's claims for personal jurisdiction must similarly fail. In its Complaint, Plaintiff admits that the accused swarms are "made up of numerous individuals, located in various jurisdictions." Complaint at pp. 17. Plaintiff has thus pursued claims in Missouri against defendants Plaintiff knows are not located in Missouri. Plaintiff makes no particularized claims supporting its allegation that John Doe 422 is subject to suit in Missouri. Nor can it. John Doe 422 does not reside, work, or conduct business in Missouri. In fact, Plaintiff's only information cited with specific regard to John Doe 422 is its knowledge that the IP address 96.39.74.6 was identified as assigned to Massachusetts.[1] *See* Complaint at Exhibit A.

Likewise, given Plaintiff's knowledge that several defendants, including John Doe 422, are located in various jurisdictions, the subpoena should be quashed and jurisdictional discovery denied. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1074 n. 1 (8th Cir.2004)). Plaintiff has failed to establish good faith belief or a factual basis on which to conclude that all defendants, and John Doe 422 specifically, can be found in Missouri. *See also Parks v. Nova Guides, Inc.*, 4:05CV0939 TCM, 2005 WL 2647965 (E.D. Mo. Oct. 17, 2005) (denying plaintiff's "conclusory request" for jurisdiction despite allegations of "good faith").

---

[1] Upon this Court's request or order, John Doe 422 is willing to proffer identity evidence, including residence and business activities, for *in camera* review by the Court.

## III.  JOHN DOE 422 SHOULD BE DISMISSED FOR IMPROPER VENUE

Venue is similarly improper and this Court should dismiss this action against John Doe 422.  Venue for claims brought under the Copyright Act are governed exclusively by 28 U.S.C. § 1400(a), which limits venue to the "district in which the defendant or his agent resides or may be found."  *See also Lumiere v. Mae Edna Walker, Inc.*, 261 U.S. 174, 176 (1923).  John Doe 422 cannot be "found" in Missouri: John Doe 422 neither resides nor conducts business in Missouri and Plaintiff's own evidence shows an IP address in Massachusetts.  Venue is not proper in this forum and John Doe 422 should accordingly be dismissed.

## IV.  JOHN DOE 422 SHOULD BE DISMISSED DUE TO MISJOINDER

Pursuant to Fed. R. Civ. P. 21, the Court should sever and/or dismiss John Doe 422 based on Plaintiff's failure to meet the requirements for joinder under Fed. R. Civ. P. 20 ("Rule 20").  Namely, Plaintiff has not shown that its right to relief is based on joint action by the defendants, the same transaction or occurrence, or common questions of law or fact, because each defendant acted independently and is entitled to separate arguments and defenses.  Moreover, the interests of justice would not be served by permitting joinder because it allows the Plaintiff to circumvent required procedural protections and will result in judicial inefficiencies.  *See 10 Grp., Inc. v. Does 1-435*, No. 10-4382, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011) ("filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for").

Rule 20 allows for joinder of defendants when two conditions are met.  First, a plaintiff must demonstrate that its "right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Rule 20(a)(2).  Second, "any question of law or fact *common to all*

*defendants* [must] arise in the action." *Id.* (emphasis added).  Even if these requirements are met, a "court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Rule 20(b).

### *Defendants Did Not Act in Concert*

The Plaintiff sprinkles the phrase "in concert" in its Complaint like magic words to satisfy the requirements of Rule 20(a)(2), but the factual allegations presented are not consistent with that terminology.  Acting "in concert" has alternatively been defined as "intentional cooperation," acting on collusion with" or "conspiring with" another.  Here, plaintiff has alleged that "each of the John Does 1-442 performed the same acts" pp 9, which resulted in an "interactive, simultaneous data-sharing connection," Complaint at pp. 10, where the BitTorrent "program coordinated the copying." *Id.* at pp. 8.  This does not allege any type of joint planning, or even knowledge of other defendants, on the part of the individual user.  Plaintiff's choice of language in alleging the defendants acted "in concert" instead seems a transparent attempt to avoid severance, as several other courts considering the issue—including against this plaintiff— have already ordered.  *See, e.g., LFP Internet Group LLC, v. Does 1-1,106*, No. 3:10-cv-02096-F (N.D. Tex. Feb. 10, 2011) (citing *West Coast Prod., Inc. v. Does 1-535*, No. 3:10-cv-94 (N.D. W. Va. Dec. 16, 2010) (quoting *Laface Records, LLC v. Does 1-38*, 2008 WL 544992, *2 (E.D.N.C. Feb. 27, 2008))). But as these courts found, and the factual allegations here show, "the copyright infringement claim against each Defendant is based on the individual acts of each Defendant . . . [and] only allege . . . that each defendant uses the same method for committing the infringement . . . [B]ut 'merely committing the same type of violation in the same way does not link defendants together for purposes of joinder.'" *Id.*

Indeed, Plaintiff's argument that the Doe Defendants ("Doe" both to Plaintiff and to each other) acted in concert turns that standard on its head and demonstrates a misunderstanding of

today's technologies.  If, as Plaintiff suggests, running a computer program that can access information residing on the computers and servers of other individuals or entities, whom a user neither knows or has communicated with directly, can be considered the equivalent to conspiring with that individual or entity, than a host of standard Internet activity is vulnerable to similar suits.  Fundamentally, the Internet relies on the ability to access information residing on the computers and servers of other users.  Recognizing this interdependency and wanting to maximize access to the benefits available through the Internet, Congress has passed such statutes as the Communications Decency Act (47 U.S.C. §230) and the Digital Millennium Copyright Act (17 U.S.C. § 512), each reflecting the public policy that, except in limited situations, an individual is not responsible for the illegal acts of another individual merely because there was on overlap in the equipment or information. *See, e.g., Zeran v. America Online, Inc.*, 129 F.3d 327, 328-331 (4th Cir. 1997) (describing basic functioning of internet and congressional purpose in limiting liability).  Similarly, and as other courts have rightly found, the Defendants here were not acting "in concert" in such a manner as to face shared liability for the individual acts of other Defendants.  *See also Raw Films v. Does 1-32*, No. 1:11-cv-2939-TWT, 2011 WL 6840590, at *2 (N.D. Ga. 2011) ( "Downloading a work as a part of a swarm does not constitute 'acting in concert' with another, particularly when the transaction happens over a long period"); *LFP Internet Grp. LLC v. Does 1-3,120*, No. 10-2095, at *3-4 (N.D. Tex. Feb. 10, 2011) (finding "that Defendants' alleged use of the BitTorrent software system to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20"); *Cinetel Films, Inc. et al v. Does 1-1.052*, No. 11-cv-2438-JFM (D. Md. 2012) ("Passively allowing another individual to upload a piece of a file is a far cry from the 'direct facilitation' plaintiffs would have this court find").  Joinder is not appropriate and the Complaint should be dismissed or severed.

### *Differences in Questions of Law and Fact Abound*

Secondly, joinder is not appropriate in this matter because there are almost certainly divergent questions of law and fact amongst the over 400 defendants. As other courts have found in this context: "The claims against the different defendants will require separate trials as they may involve separate witnesses, different evidence, and different legal theories and defenses, which could lead to confusion of the jury . . . . Moreover, the Court finds that there will almost certainly [be] separate issues of fact with respect to each Defendant." *BMG Music v. Does 1-203*, No. Civ. A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. 2004).  Other courts have recognized the potential for "wast[ing] of judicial resources," *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11-3995 (E.D.N.Y. May 1, 2012), "substantially prejudice[ing] defendants and the administration of justice," *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011), and creating a "logistical nightmare" and "procedural albatross," *Pacific Century Int'l v. Does*, 2011 WL 5117424 (N.D. Cal. Oct. 27, 2011).

As these courts have explored, the reasons for such differences in questions of fact and law stem from the nature of Internet use, and the inherent flaw in basing infringement accusations on only an IP address.

"IP subscribers are not necessarily copyright infringers . . . . [while] an IP address might actually identify an individual subscriber and address[,] the correlation is still far from perfect . . . . The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *VPR Internationale v. Does 1-1,017*, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. 2011); *see also BMG Music v. Does 1-203*, No. Civ. A. 04-650, 2004 WL 953888 (same).  The analysis becomes only more complicated when one considers how many businesses are assigned IP addresses and operate

wireless networks.  Many individual devices can appear to share the same IP address because of neighborhood and business routers and other Network Address Translation (NAT) devices, which can display one public IP address and assign private IP addresses (like extensions) within the network. *See* Wikipedia entries: Network Address Translation; IP Address (last visited Jan. 24, 2013). This phenomenon can occur for both plugged-in devices and for wireless networks (secured and unsecured).

Plaintiff appears to be aware of the reality of this potential discrepancy between identifying an IP address account holder and the actual infringer and seeks "to learn the identity of the account holders of the IP addresses," Complaint at pp. 25.  However Plaintiff also, and inconsistently, alleges that "[e]ach John Doe Defendant owns or otherwise has control of a different computer collectively connected to the Internet. " Complaint at pp. 54.  But as illustrated above through the ordinary functioning of networks and sharing of Internet connections, simply identifying an account holder of an IP address cannot sustain this allegation. This is particularly true in the case of third-party devices connected to an open wireless network, in which the defendant may have *never* owned or had control of the device, or the infringing material obtained or residing on it.

If, in fact, any infringement that may have occurred was the result of an account holder merely maintaining—intentionally or unintentionally—an open wireless network accessed by a third party, no suit lies against the IP address account holder at all.  "One infringes contributorily [only] by intentionally inducing or encouraging direct infringement, see *Gershwin Pub. Corp.* v. *Columbia Artists Management, Inc.,* 443 F. 2d 1159, 1162 (2d Cir. 1971), and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it, *Shapiro, Bernstein & Co.* v. *H. L. Green Co.,* 316 F. 2d 304, 307 (2d Cir. 1963)." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 US 913, 930 (2005).  Neither intentional

inducement nor profit from any infringement would lie where an account holders network is used without permission.  Several courts have recently considered the argument of whether an open wireless network could sustain an infringement or negligence action, to a resounding "no." *See, e.g.*, *Liberty Media Holdings, LLC v. Tabora*, No. 1:12-cv-02234-LAK (S.D.N.Y. July 9, 2012) (holding negligence claim preempted by Copyright Act); *AF Holdings, LLC v. Doe*, No. 4:12-cv-02049-PJH (N.D. Cal. Sep. 4, 2012) (dismissing negligence claim based on preemption and no duty).

### *Discretion Favors Severance to Protect Procedural Fairness*

Plaintiff spills much ink deriding the volume and impact of rampant copyright infringement over the Internet, notably citing *Capital Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012), in which a jury verdict was upheld for "a woman's online infringement of 24 songs ($9,250 per song)."  *See* Plaintiff's Response, ECF #43, at p. 2.  But while extolling *Thomas-Rasset*, Plaintiff also claims that the "need to file individual cases [ ] would require Plaintiff to pay separate filing fees in each case, . . . limiting its ability to protect its legal rights." Plaintiff's Response at p. 3.  These positions are difficult to reconcile within the context of copyright law.  Plaintiff has demonstrated that claims can proceed against individuals, rendering statutory damages and, in the right circumstances, findings of willful infringement with enhanced statutory damages.  *See, e.g., Sony BMG Music Entertainment et al v. Tenenbaum*, 660 F.3d 487 (1st Cir. 2011) (discussing jury verdict holding defendant willfully infringed and awarding $22,500 per infringed recording). Moreover, under the Copyright Act, Plaintiff may recover costs and attorney's fees as a remedy in a successful action.  17 U.S.C. §505.  Therefore, Plaintiff need not be impeded from filing separate actions and would not be without remedy if the Court were to find severance appropriate.

Instead of pursuing these existing remedies, however, or developing a business partnership or solution to facilitate recovery for multiple movies or infringements by a single individual—as pursued by the RIAA—Plaintiff instead attempts to contort and distort federal process and protections to suit its aims.  From attempts to circumvent due process concerns by obtaining discovery and maintaining actions where there is no personal jurisdiction, to improper joinder, Plaintiff's arguments threaten to undermine important procedural safeguards designed to protect defendants from vexatious lawsuits.  It is helpful to note that Plaintiff's action most closely resembles a reverse, defensive class action.  Class actions, by contrast, require heightened oversight by the court to protect the interests of all parties, including approval of class status and settlements.  Plaintiff seeks to avoid any such oversight or involvement by the court.

Moreover, unlike the infringement prosecutions in either *Thomas-Rasset* or *Tenenbaum*, the dearth of prosecution of the types of cases as Plaintiff has brought—including by failing to name or serve defendants or failure to pursue individual actions following severance—begs the question of whether Plaintiff is truly interested in protecting its legal rights, or simply using the legal process to extract settlements from potentially innocent parties. *See, e.g., West Coast Productions, Inc. v. Swarm Sharing Hash* Files, No. 6:12-cv-01713-RTH-CMH (W.D. La. Nov. 19, 2012) (voluntary dismissal of Doe #1 following severance); *West Coast Productions, Inc. v. Does*, No. 1:11-cv-00057-CKK (D.D.C. Sep. 8, 2011) (voluntarily dismissed remaining Doe defendants on last day by which plaintiff was ordered to file proofs of service); *West Coast Productions, Inc.*, 3:10-cv-00094-JPB-JES (N.D. W. Va. Jan. 10, 2011) (voluntary dismissal following order of severance).[2]  Instead, many plaintiffs in these lawsuits appear to believe they

---

[2] A party search conducted on PACER shows that Plaintiff has, in fact, initiated 42 similar lawsuits from September 2010 through December 2012.  These cases have averaged only about six months in duration (with several cases filed in late 2012 still pending). *See* Exhibit A.

are entitled to identification discovery (subpoenaing ISPs for the identities of their subscribers) in *any* court in the country, without *any* consideration of the court's jurisdiction and regardless of whether plaintiff intends to use that information in prosecuting an infringement action.  Here too, while Plaintiff has itself submitted evidence showing that John Doe 422's IP address is located in Massachusetts, it has not pursued an action in that state.  In this action, Plaintiff has voluntarily dismissed (and presumably settled with) Defendants whom Plaintiff identified as having IP addresses in California (Doe 377), Massachusetts (Doe 371), Missouri (i.e. Doe 309), and Wisconsin (Doe 139)—without having to file actions in forums where the out of state Defendants were found.  This Court should not permit Plaintiff to circumvent jurisdictional and procedural safeguards, and absent a quashing of the subpoena, should sever this matter.  *See also Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000) (explaining that permissive joinder must "comport with the principles of fundamental fairness").

      Plaintiff also makes the curious argument that defendants cannot raise jurisdictional and joinder arguments without first being named and served properly as "defendants" in this action. This argument is odd because the defendants, including John Doe 422, are functionally already defendants in this suit, identified by specific and uniquely assigned Doe numbers and IP addresses.  Plaintiff has itself made consistent use of this identification system, making numerous references in pleadings and orders to particular Doe Defendants.   Plaintiff has also dismissed several defendants from this action, with prejudice, while not yet named.  These dismissed defendants would be entitled to assert res judicata if Plaintiff were to name them in a new suit based on the same alleged infringement.  It is thus inconsistent for Plaintiff to take advantage of the Doe defendants' identification by entering settlement agreements with and filing formal motions with this Court to voluntary dismiss defendants, but argue that the Doe defendants should not be permitted to make a defensive motion to dismiss.  Plaintiffs should be

estopped from making this argument. The Court should promote procedural fairness and consistency, and preserve the defendants' due process rights by ruling on the jurisdictional and joinder defects presented.

Plaintiff also argues, "no defendant will be prejudiced by joinder at this stage, as none have been served in the matter or required to respond to the complaint," Response at p. 10, emphasizing that "[m]ovants have not been personally named in this action" and "[t]herefore, Movants are not required to respond to the Complaint or otherwise litigate in this District . . . ." *Id.* at p. 9. Aside from the procedural inconsistency noted above (in permitting Plaintiff to file individualized motions addressing specific defendants but seeking to prohibit individual defendants from doing the same), this argument also exposes Plaintiff to a fundamental jurisdictional defect under Article III of the U.S. Constitution. "[A]n actual case or controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, No. 11-982, 586 U.S. ____, slip op. at 3-4 (Jan. 9, 2013) (internal quotations omitted). "With no defendant there is no case or controversy and thus no jurisdiction for this Court to act." *Whitehead v. Savannah Fire Dep't.*, No. CV411-229, U.S. Dist. LEXIS 122816, at *2 (S.D. Ga. Nov. 8, 2011); *see also Xechem Int'l, Inc. v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1332 (Fed. Cir. 2004) ("with no defendant, there is no suit"). Plaintiff has not named any defendant in this matter, so if no defendant has standing as a party to object to subpoenas or seek dismissal, there is no case or controversy.

## V.  THE SUBPOENA SHOULD BE QUASHED

A party has standing to challenge a subpoena to a non-party if the party claims "some personal right of privilege in the information sought in the subpoena." *Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221 (D. Md. Feb. 24, 2010).

In this case, Defendant has a right to privacy in the personal information sought by Plaintiff, including Defendant's name and address. No matter how "minimal or 'exceedingly small' the Doe Defendants' interests are, parties need only have 'some personal right or privilege in the information sought' to have standing to challenge the subpoena to a third party." *Robertson*, 2010 WL 716221, at *1. Accordingly, John Doe 422 has standing to contest the subpoenas. *Third Degree Films, Inc. v. Does 1-108*, 8:11-cv-3007-DKC (D. Md. 2012).

Fed. R. Civ. P. 45(c)(3)(a) states that a court must quash a subpoena that subjects a person to an "undue burden." A court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" upon a showing of good cause." Fed. R. Civ. P. 26(c).

As addressed throughout this Motion, the Court should quash the subpoena. First, because Plaintiff has not sufficiently alleged and cannot establish personal jurisdiction or venue over "numerous individuals, located in various jurisdictions." Complaint at pp. 17 and Exhibit A (showing locations for accused IP addresses). Plaintiff has not alleged the specificity necessary to make a prima facie case of jurisdiction to entitle it to this type of jurisdictional discovery. Subpoenas to the ISPs are not required to show there is no personal jurisdiction, as Plaintiff's own materials and allegations illustrate that it cannot maintain an action against many of the defendants, including John Doe 422.

Second, Plaintiff's allegations and maneuvers demonstrate a disregard for established federal procedure. Plaintiff appears to want to use the subpoena power of this court to engage in "a fishing expedition by means of a perversion of the purpose and intent of class actions." *VPR Internationale*, 2011 U.S. Dist. LEXIS 64656. Allowing the subpoenas and identification to move forward will not cure the fundamental jurisdictional and joinder deficiencies in this action.

Third, Plaintiff has the potential of obtaining identifying information for many innocent Does, due to the fundamental nature of shared Internet resources (intentionally or unintentionally).  *See Pac. Century Int'l., Ltd.*, CV-11-2533(DMR), 2011 WL 5117424 at *2 ("Plaintiff's sought-after discovery, as designed, has potential to draw numerous innocent users into the litigation, placing a burden on them that outweighs Plaintiff's need for discovery").

Finally, the potential for abuse of that information is heightened because of the nature of the subject matter at issue. Whether a direct downloader with a valid defense, an innocent parent or roommate, or a business owner, the embarrassing material at issue "gives rise to the potential for coercing unjust settlements from innocent defendants." *Digital Sin, Inc. v. Does 1-176*, CV-12-00126, 2012 WL 263491, at *1 (S.D.N.Y. Jan. 30, 2012).  The potential reputational harm to Defendant, coupled with out-of-state and expensive litigation over baseless and unspecified accusations favors increased supervision by the Court and quashing the subpoena to protect Defendant's due process rights.

## VI.  CONCLUSION

Based on the foregoing, John Doe 422 respectfully requests dismissal based on lack of jurisdiction and improper venue, and dismissal or severance based on improper joinder. Alternatively, John Doe 422 requests that the subpoena should be quashed.

Respectfully submitted,

ATTORNEYS FOR DEFENDANT JOHN DOE 422

By  *s/ Matthew A. Radefeld*
MATTHEW A. RADEFELD (#52288MO)
7710 Carondelet Ave., Suite 350
Clayton, Missouri 63105
(314) 725-7777
*mradefeld@fjrdefense.com*

OF COUNSEL:
Joseph J. Laferrera (MA BBO #564572)
Crystal L. Lyons (CA Bar # 260228;
MA BBO # 677931)
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
(617) 350-6800
*crystal.lyons@gmail.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Mr. Paul Lasko, Esq.
Simmons Browder Gianaris
   Angelides & Barnerd LLC
Attorneys for Plaintiff
One Court Street
Alton, IL  62002

                  *s/ Matthew A. Radefeld*
                  MATTHEW A. RADEFELD